IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Anthony Curtis Bullock | Crim. No. 4:11-cr-00416-TLW<br><br>**ORDER** |

This matter comes before the Court on two pro se motions filed by Defendant Anthony Curtis Bullock's for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i), along with a motions seeking the appointment of counsel to assist in litigating his § 3582 motions. ECF Nos. 1120, 1121 & 1135. For the reasons below, his motion is **DENIED**.

PROCEDURAL BACKGROUND

On March 22, 2011, a federal grand jury returned a single-count Indictment charging Bullock with being part of a conspiracy to possess with the intent to distribute and to distribute multiple controlled substances in violation of 21 U.S.C. §§ 841 and 846. ECF No. 3. On September 14, 2011, Bullock pled guilty to the first and only count of the Indictment. ECF Nos. 386 & 387. Bullock pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement that called for a term of imprisonment of 18 years or 216 months. ECF No. 367. On January 19, 2012, a sentencing hearing was held in which Bullock was sentenced to the 18-year term called for in the plea agreement. ECF Nos. 547 & 565. On February 1, 2012, Bullock filed a notice of appeal of his conviction and sentence. ECF No. 585. By opinion issued September 6, 2012, the Fourth Circuit Court of Appeals affirmed Bullock's conviction and dismissed his

appeal as it related to his sentence, reasoning that it lacked the jurisdiction to review a sentence that was imposed pursuant to a Rule 11(c)(1)(C) plea agreement. ECF No. 720.

On November 19, 2012, Bullock petitioned for habeas corpus pursuant to 28 U.S.C. § 2255, which was denied by detailed order of this Court. ECF Nos. 733 & 751. The Fourth Circuit subsequently dismissed Bullock's appeal of that order because the Court declined to issue a certificate of appealability. ECF No. 960.

Bullock next filed the instant motions for compassionate release requesting his immediate release. ECF Nos. 1120 & 1135. The Government has responded in opposition, ECF No. 1140, to which Bullock has filed a reply. ECF No. 1143. The matter is now ripe for decision.

## APPLICABLE LAW

Without certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But before the passage of the First Step Act, compassionate release motions could be filed only by the BOP, so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a question reserved to the sound discretion of the district court.

## DISCUSSION

### I. THE PARTIES' ARGUMENTS

Before addressing the merits of Bullock's motion for compassionate release, the Court will first review the arguments put forth by both Bullock and the Government.

*See* ECF Nos. 1120, 1135, 1140 & 1143.

### A.  *Bullock's Arguments in Support of His Motion*

In his motion, Bullock asserts that he has established "extraordinary and compelling reasons" meriting his release from incarceration. These reasons are three-fold. First, he asserts that the COVID-19 pandemic, when coupled with his underlying health conditions, presents an "extraordinary and compelling reason." ECF No. 1135 at 12. Second, he contends that, if sentenced today, he would no longer qualify as a career offender because his 2006 South Carolina conviction for possession with intent to distribute marijuana ("PWID") would no longer constitute a valid predicate for career offender status. *Id.* at 5. Third, in his reply to the Government's response, Bullock asserts that he is no longer a career offender because the instant offense conviction, conspiracy to possess with intent to distribute in violation of 21 U.S.C. § 846, no longer qualifies as a "controlled substance offense" after *United States v. Whitley*, 737 F. App'x 147, 149 (4th Cir. 2018) and *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019). ECF No. 1143 at 9. Finally, Bullock posits that the § 3553(a) sentencing factors favor his release due to his rehabilitative efforts. ECF No. 1135 at 11.

### B.  *The Government's Opposition*

The Government opposes Bullock's motion. ECF No. 1140. As for the "extraordinary and compelling reasons" standard, the Government argues that the COVID-19 pandemic does not provide a basis for meeting this standard given the roll-out of effective vaccines. *Id.* at 9. The Government also asserts that Bullock's 2006

South Carolina conviction for PWID marijuana qualifies as a career offender predicate, notwithstanding *United States v. Campbell*, 22 F.4th 438 (4th Cir. 2022). *Id.* at 16. It thus cannot serve to establish "extraordinary and compelling reasons" warranting his release. *Id.* Finally, the Government maintains that, even if Bullock met the "extraordinary compelling reasons" standard, his motion should still be denied because the § 3553(a) sentencing factors weigh against either his release or a reduction in his sentence. *Id.* at 23.

## II.   THE COURT'S REVIEW

The Court will first take up Bullock's request for the appointment of counsel before moving on to its analysis of whether Bullock has presented "extraordinary and compelling reasons" warranting a reduction in his sentence along with whether the § 3553(a) factors weigh in favor of his release.

### A.   *Appointment of Counsel*

Bullock requests that the Court appoint him counsel in connection with this post-conviction § 3582 proceeding. It is well settled that "a criminal defendant has no right to counsel beyond his first appeal." *Coleman v. Thompson,* 501 U.S. 722, 756 (1991); *United States v. Coleman*, No. CR 3:01-506-JFA, 2020 WL 8258249, at *1 (D.S.C. July 30, 2020) ("As an initial matter, there is no general constitutional right to appointed counsel in post-conviction proceedings."). Although due process mandates the appointment for certain post-conviction proceedings, a motion to reduce a sentence pursuant to § 3582(c) does not fit into this category. *United States v.*

*Legree,* 205 F.3d 724, 730 (4th Cir. 2000). The Court has discretion to appoint counsel in proceedings under § 3582(c) if the interests of justice so require. *Id.*

Bullock requests the appointment of counsel "to assist him in the prosecution of his motion pursuant to 18 U.S.C. § 3582(c)(1)(A)." ECF No. 1121. In review of Bullock's motion, the Court finds that he is capable—and has proven capable—of prosecuting this action without the assistance of counsel and that he has not otherwise established that the interests of justice require the appointment of counsel in this case. Bullock has raised a number of issues which will be addressed on the merits by this Court. Accordingly, the Court denies Bullock's request for the appointment of counsel.

### B. *The "Extraordinary and Compelling Reasons" Standard.*

Bullock sets forth three grounds for establishing "extraordinary and compelling reasons." They are (1) the threat posed by the COVID-19 pandemic, (2) his position that his 2006 South Carolina conviction for possession with intent to distribute no longer qualifies as a valid career offender predicate, and (3) his argument that his instant offense conviction, conspiracy to possess with intent to distribute in violation of 21 U.S.C. § 846, no longer qualifies as a "controlled substance offense" for career offender purposes. Accordingly, the Court will address each of these arguments in turn.

#### i. <u>COVID-19 does not present an extraordinary and compelling reason warranting a reduction in Bullock's sentence.</u>

For the reasons below, the Court finds that Bullock has not established that the COVID-19 pandemic alone provides an "extraordinary and compelling" reason

warranting a reduction of his sentence.

As noted in his motion and acknowledged by the Government, Bullock does present several risk factors identified by the Center for Disease Control as posing an increased risk of an adverse outcome from COVID-19.[1] Bullock's risk factors are hypertension and obesity. ECF No. 1135 at 12; ECF No. 1140 at 11. That said, Bullock received the COVID-19 vaccine on April 14, 2021, and again on May 4, 2021. ECF No. 1140–1 at 2. In light of Bullock's vaccination, the Government asserts that the risk of COVID-19 alone can no longer establish "extraordinary and compelling reasons." ECF No. 1140 at 11. Accordingly, the question before the Court is whether Bullock can still establish "extraordinary and compelling reasons" after receiving the vaccine.

Although the Fourth Circuit has so far not established a *per se* rule that the availability of the COVID vaccine precludes compassionate release, courts in this district have held that, "[f]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Henry*, No. CR 3:17-00640-MGL-4, 2022 WL 16541161, at *2 (D.S.C. Oct. 28, 2022) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)) (internal quotations omitted); *United States v. Wolfe*, No. 6:18-CR-00582-DCC-1, 2022 WL 1204840, at *5 (D.S.C. Apr. 21, 2022); *United States v. Raap*, No. 8:18-CR-00678-DCC-1, 2021 WL 2328048, at *3 (D.S.C. June 8, 2021). Accordingly, "[f]ollowing full vaccination, it is now well understood, both the likelihood of contracting COVID-

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last accessed April 4, 2023).

19 and the associated risks should one contract the virus are significantly reduced so that an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *United States v. McBride*, No. 2:09-CR-01223-DCN-1, 2023 WL 207330, at *3 (D.S.C. Jan. 17, 2023) (citations omitted). Based on this authority—along with the fact that Bullock received two doses of the vaccine—the Court concludes that the risk of COVID-19 alone provides a less persuasive, compelling basis for establishing "extraordinary and compelling" reasons under § 3582.

Turning to Bullock's other medical conditions of hypertension and obesity, the Court finds that they do not rise to the level of establishing "extraordinary and compelling reasons" warranting relief. After all, Bullock does not argue either that he is now suffering any adverse medical impact from these conditions or that they are being left untreated. The Court thus finds that neither the COVID-19 pandemic nor Bullock's other medical conditions meet the "extraordinary and compelling reasons" standard warranting either his release or a sentence reduction.

ii. <u>Bullock's 2006 South Carolina conviction remains a viable predicate for career offender status and is thus not an "extraordinary and compelling reason" warranting relief.</u>

Bullock next argues that, if sentenced today, his 2006 South Carolina conviction for PWID marijuana would not remain a viable predicate for career offender status. In reviewing the record and relevant case law, the Court finds that Bullock has not established that he is entitled to relief. This issue is settled based on current caselaw. Caselaw discussed in this section outlines the current status of the law regarding PWID.

Under § 4B1.1 of the Sentencing Guidelines, a defendant is a career offender if (1) he was at least 18 years old at the time of the offense of conviction; (2) the offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). Before the instant offense conduct, Bullock's Presentence Investigation Report ("PSR") identified two qualifying predicate convictions for career offender status: (1) a 2002 North Carolina conviction for PWID of a controlled substance and (2) a 2006 South Carolina conviction for PWID marijuana. PSR ¶ 29; ¶ 34.

Bullock now contends that, under current case law, his 2006 conviction no longer qualifies as a valid career offender predicate. Bullock points to the Supreme Court's opinion in *Mathis v. United States*, 579 U.S. 500 (2016) to argue that his 2006 conviction "does not qualify as a 'controlled substance offense' under U.S.S.G. 4B1.1." ECF No. 1135 at 8. This argument, however, is foreclosed by recent Fourth Circuit decisions which, in applying *Mathis*, have held that PWID under South Carolina law is a "controlled substance offense" under the career offender guideline. Specifically, the Court looks to *United States v. Marshall*, 747 F. App'x 139, 140 (4th Cir. 2018) (unpublished) and *United States v. Williams*, 997 F.3d 519 (4th Cir. May 13, 2021).

In *Marshall*, the Fourth Circuit referenced *Mathis* in holding that a defendant's three prior South Carolina convictions for PWID marijuana within proximity of a school and prior South Carolina conviction for PWID marijuana were viable predicate offenses for both career offender status and armed career offender

status. 747 F. App'x at 151. Regarding career offender predicates, the *Marshall* court concluded "we hold that the South Carolina offense of possession with intent to distribute [] matches the definition of 'controlled substance offense' under the career offender guidelines." *Id.* (citing U.S.S.G. § 4B1.2(b) (defining "controlled substance offense" in part as "possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense"). Three years later, in *Williams*, the Fourth Circuit, again noting *Mathis*, held that PWID under South Carolina law (this time in the context of crack cocaine) "is categorically a controlled substance offense under the Guidelines." 997 F.3d at 525. Based on this authority, the Court is unpersuaded by Bullock's second argument for establishishing "extraordinary and compelling reasons."[2]

The Court notes that, Bullock's argument is based on the rationale of *United States v. Campbell,* 22 F.4th 438 (4th Cir. 2022). *Campbell* specifically addresses a West Virginia statute. The Court held that attempt is not a controlled substance offense under the Sentencing Guidelines. Campbell does not hold that PWID under South Carolina law is no longer a controlled substance offense. It is not a a basis for relief here.

### iii.     <u>Non-retroactive changes in sentencing laws do not provide a basis for establishing "extraordinary and compelling reasons" in this case.</u>

Bullock's final basis for establishing an "extraordinary and compelling reason"

---

[2] In coming to this conclusion, the Court has carefully reviewed the Fourth Circuit's recent decision in *United States v. Jackson*, No. 22-4179, 2023 WL 2852624 (4th Cir. Apr. 10, 2023) (unpublished) in which the Fourth Circuit held that a defendant's prior convictions under South Carolina law for distribution of crack did not constitute "controlled substance offenses."

warranting his release is his assertion that his offense of conviction, conspiracy in to possess with intent to distribute in violation of 21 U.S.C. § 846, no longer qualifies as a "controlled substance offense" for career offender purposes. ECF No. 1143 at 9–10. In support of this assertion, Bullock points to *United States v. Whitley*, 737 F. App'x 147, 149 (June 12, 2018) (unpublished) and *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019).[3] *Id.* The Court will address each of these cases and Bullock's argument in turn.

In *Whitley*, the Fourth Circuit held that a conviction for conspiracy to distribute in violation of 21 U.S.C. § 846 is not categorically a controlled substance offense for purposes of the career offender designation. 737 F. App'x at 149. This is because a conviction under § 846 does not require an overt act and, therefore, "criminalizes a broader range of conduct than that covered by generic conspiracy" listed in § 4B1.2 cmt n.1 of the Guidelines. *Id.* (internal quotations and citation omitted). The Fourth Circuit reaffirmed *Whitley* the next year in *Norman* where, in a published opinion, it held that a controlled substance conspiracy in violation of § 846 is not categorically a controlled substance offense, and thus not a qualifying offense for career offender status under the Sentencing Guidelines. 935 F.3d at 238.

The holdings in these cases, though, were not deemed retroactive. *See United States v. Anderson*, No. CR 3:14-604-JFA, 2022 WL 395235, at *7 (D.S.C. Feb. 9, 2022) ("*Norman*'s holding, however, has not been deemed to apply retroactively");

---

[3] Because this argument was raised in Bullock's reply, the Government has not addressed either *Whitley* or *Norman* in its response.

*United States v. Williams*, No. CR 3:11-2064-JFA, 2022 WL 17834097, at *6 (D.S.C. Dec. 21, 2022) ("*Norman* has been held by the Fourth Circuit Court of Appeals to be non-retroactive"). However, the Court is authorized in compassionate release cases, pursuant to *McCoy*, to examine the sentence a defendant would receive today compared with the sentence actually imposed at the time of conviction. *McCoy* did not, however, require that courts reduce a defendant's sentence based on mere differences in Guidelines calculations.

At the time of sentencing, Bullock had a criminal history category of VI based on a significant criminal history, which is outlined in greater detail below. PSR ¶ 40. His initial total offense level was 37, which was based on his career offender status. PSR ¶ 56. He did, however, receive a 3-level reduction for acceptance of responsibility, which reduced his total offense level to 34. *Id.* ¶¶ 57–59. Based on a total offense level of 34 and a criminal history category of VI, his advisory guidelines range for imprisonment is 262 to 327 months. *Id.* ¶ 87. As discussed, Bullock was sentenced below this guidelines range to 216 months pursuant to a Rule 11(c)(1)(C) plea agreement. *Id.* ¶ 87.

If Bullock were not a career offender today, he would still have a criminal history category of VI—the highest criminal history category. His initial base offense level would be a 32. Applying the same 3 level reduction for acceptance of responsibility would bring his total offense level to 29. A criminal history category of VI with a total offense level of 29 would give him an advisory guidelines range of 151 to 188 months imprisonment. *See* U.S.S.G. § 5A. This would result in a 28-month

difference between his 11(c)(1)(C) stipulated sentence and the top end of the guidelines range.

As noted, *McCoy* did not require that district courts reduce a defendant's sentence based on mere difference in guidelines calculations. Instead, *McCoy* emphasized that district courts should "conduct individualized inquires" and consider individual factors specific to each defendant. 981 F.3d at 288. The Court has followed that guidance in this case and concludes that, based on the nature of the offense conduct, Bullock's extensive criminal history, and the nature of the parties' 11(c)(1)(C) stipulated sentence, that Bullock has not met his burden of establishing "extraordinary and compelling reasons" warranting relief. This reasoning is discussed in greater detail in the Court's review of the § 3553(a) factors.

The Court thus concludes that "extraordinary and compelling reasons" warranting relief do not exist in this case.

### C. *The Court's review of the § 3553(a) factors*

Even if Bullock had asserted enough to establish "extraordinary and compelling reasons," the Court concludes that it would still be appropriate to deny his motion based on an analysis and balancing of the § 3553(a) factors. The Court has balanced those factors in light of the compassionate release issues not in play at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring).

As part of the § 3553(a) factors, it is appropriate to review the facts surrounding Bullock's instant offenses. The offense conduct is outlined in detail in Paragraphs 5–17 of the PSR. The Court will not restate all of that information here

but will highlight the conduct at issue. Beginning in 1998, Bullock began selling drugs. PSR ¶ 21. Eventually, he became involved in a drug conspiracy that distributed crack cocaine in the Chesterfield County area of South Carolina, as well as the Anson County area of North Carolina. *Id.* ¶ 17. The conspiracy ultimately lasted from the 1990s until 2006, and Bullock was held accountable for a "conservative estimate" of 659.14 grams of crack cocaine. *Id.* After a review of the facts of the instant offenses, the Court concludes that "the nature and circumstances of the offense" also weigh against both his release and a reduction in his sentence.

The Court next looks to "the history and characteristics of the defendant," which reveals Bullock's significant—and violent—criminal history. Bullock's criminal history began at the age of 16. *Id.* ¶ 23. From ages 16 through 18 he was convicted of disorderly conduct, communicating threats, simple affray,[4] and possession of drug paraphernalia. *Id.* ¶¶ 23–26. His conduct continued at the age of 19, when he was convicted of possession of marijuana and cocaine. *Id.* ¶ 28. That same year he was convicted of the first of his *four* convictions of assault on a female. *Id.* ¶ 28. Next, at 20, he was convicted of three counts of possession with intent to manufacture/sell/distribute controlled substances. *Id.* ¶ 29. Two months after this arrest, he was arrested and convicted of his second charge of assaulting a female. *Id.* ¶ 30. The PSR notes that he assaulted the female "by punching her on the left side of

---

[4] Simple affray is a misdemeanor offense in North Carolina which "has been defined "as a fight between two or more persons in a public place so as to cause terror to the people." *In re May*, 153 N.C. App. 299, 303, 569 S.E.2d 704, 708 (2002), *aff'd,* 357 N.C. 423, 584 S.E.2d 271 (2003) (cleaned up).

the face at her eye." *Id.* Six days later, Bullock was arrested and later convicted on charges of resisting a public officer. *Id.* ¶ 31.

Following some additional lesser criminal charges, Bullock was arrested four years later with 24 individually wrapped bags of marijuana and convicted of possession with intent to distribute. *Id.* ¶ 34. Three weeks later Bullock was again arrested and convicted of two more charges of assaulting a female. *Id.* ¶ 35. Those facts warrant mentioning here. The PSR states that, on May 29 2006, Bullock assaulted a female by hitting her in the face, pulling her hair and breaking her glasses. *Id.* Less than a week after this assault, Bullock again assaulted the same individual by hitting her in the face and head with his fists and slapping her with an open hand. *Id.* While he received a suspended sentence and supervised probation for these incidents, his probation was later revoked after he failed *ten* drug tests, failed to abide by his curfew, failed to pay a fine, failed to attend anger management treatment, and failed to become gainfully employed. *Id.* ¶ Further, at the time of the instant offenses, Bullock was serving several probation sentences in Anson County, North Carlina, as well as a probation sentence in Chesterfield County, South Carolina. *Id.* ¶ 39. In light of this significant criminal conduct, including violent offenses, the Court concludes that "the history and characteristics of the defendant" weigh substantially against both Bullock's release and a sentence reduction.

The Court also concludes that §§ 3553(a)(2)(A)-(C) weigh against release for similar reasons. The circumstances of the instant conspiracy offense, which spanned several years, demonstrate Bullock's disregard for the law. This conclusion is

buttressed by his propensity to commit acts of violence. His prior inability to comply with the terms of probation in two separate states also weighs against him. The Court finds that the sentence imposed was—and is—necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence. If released, Bullock would pose a risk to the safety of others based on the violent conduct outlined herein.

The Court next turns to §§ 3553(a)(3)-(6)—the kinds of sentences available, the Guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. Bullock pled guilty to conspiracy and received a 216-month sentence pursuant to a Rule 11(c)(1)(C) agreement. As noted above, Bullock contends that, because he would no longer be a career offender today, he is entitled to a reduced sentence. The Court concludes otherwise. The Government sought a significant sentence against Bullock, and the 11(c)(1)(C) stipulated sentence was a way to accomplish that in light of Bullock's role in the conspiracy and his significant criminal history. As illustrated above, the Court has considered a recalculation of the Guidelines under current law. That said, judicial restraint counsels against disturbing the parties carefully negotiated 11(c)(1)(C) plea agreement. *United States v. Bond*, 56 F.4th 381, 385 (4th Cir. 2023) (affirming the district court's denial of a § 3582 motion on the basis "that modifying the sentence would disturb the parties' carefully negotiated agreement") (cleaned up); *see also United States v. Jackson*, No. CR 3:16-69-JFA, 2022 WL 3908671, at *3 (D.S.C. Aug. 30, 2022) ("However, all of these changes in the sentencing laws are of no significance in this case. The defendant

pleaded guilty in a written plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C), which provided for an agreed upon sentence [.]"). After all, Bullock received the exact sentence he bargained for in the plea agreement: 216 months. The Court has thus given careful consideration to this issue and §§ 3553(a)(3)-(6) and concludes that those factors do not favor either Bullock's release or a reduction in his sentence.

As to the remaining factors, the Court has reviewed Bullock's Inmate Education Data Transcript, ECF No. 1135–6, and acknowledges that he has made some rehabilitative efforts while incarcerated. Still, that factor, balanced against the other § 3553(a) factors, does not warrant release. His record reflects several serious and violent crimes, and his rehabilitative efforts do not outweigh the repetitive violence and contempt for the law that he exhibited before his incarceration. Accordingly, the Court finds that the § 3553(a) factors weigh against both Bullock's release and a reduction in his sentence.

## CONCLUSION

Where, as here, a defendant has exhausted the administrative remedies and files a motion directly to the Court, the Court will analyze each defendant's motion on a case-by-case basis to determine when a potential reduction is appropriate. In this case, Bullock has not established "extraordinary and compelling reasons" warranting relief. Additionally, even if he had, his motion would still be denied based on the Court's analysis and balancing of the § 3553(a) factors. In conclusion, the Court

finds that neither a reduction in his sentence nor the release of Bullock is appropriate.

Accordingly, Bullock's Motion, ECF No. 1135, is **DENIED**.[5]

    **IT IS SO ORDERED.**

                                                   *s/Terry L. Wooten*

                                                   Senior United States District Judge

May 10, 2023
Columbia, South Carolina

---

[5] To the extent he seeks an order directing the BOP to grant him an early release to home confinement pursuant to the CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), the Court does not have discretion to issue such an order. *See, e.g.*, *United States v. Hendrix*, No. 1:10-cr-00067-MR-WCM-2, 2020 WL 2319698, at *1 (W.D.N.C. May 11, 2020) ("The discretion to release a prisoner to home confinement lies solely with the Attorney General. The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this." (citations omitted)).